IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DIAMOND RANCH ACADEMY, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CHELSEA FILER,[1] <br><br> Defendant. | ORDER <br> AND <br> MEMORANDUM DECISION <br><br><br> Case No. 2:14-CV-751-TC |

Plaintiff Diamond Ranch Academy, Inc. (DRA), a youth treatment and rehabilitation facility in southern Utah, brings this defamation action against Defendant Chelsea Filer, a California resident who has created a website (and made other statements) highly critical of DRA.  Ms. Filer has filed a Special Motion to Strike DRA's amended complaint under the California anti-SLAPP[2] statute.[3]  In response, DRA filed a Motion to Stay Briefing on the Special Motion to Strike pending discovery.[4]

---

[1]The Plaintiff changed her last name to Papciak, but because the official docket lists her as Chelsea Filer, the court will refer to her as Ms. Filer.

[2]SLAPP stands for "Strategic Lawsuit Against Public Participation."

[3]She also filed an accompanying motion for judgment on the pleadings and a counterclaim under the Utah anti-SLAPP statute as an alternative to her California anti-SLAPP challenge.

[4]DRA also filed a related Motion for Extension of Time to file its response to the Special Motion to Strike.

During a status conference, threshold issues arose concerning which forum's law to apply (not only state versus state, but state versus federal). Based on that discussion, the court ordered the parties to file briefs addressing the choice of law issues, including whether it is necessary to conduct discovery before the court rules on the special motion to strike.

Based on the court's review of the briefs filed in this case, relevant case law, and evidence already in the record, the court finds that discovery is not necessary because the record is sufficient to complete the choice of law analysis. The court further holds, for the reasons set forth below, that (1) neither the California nor the Utah state anti-SLAPP statutes conflict with the Federal Rules of Civil Procedure; (2) Utah's and California's anti-SLAPP statutes materially conflict; and (3) California has the most significant relationship to the immunity issue raised by Ms. Filer in her Special Motion to Strike.

## BACKGROUND

DRA filed this diversity suit raising defamation-based claims of libel, libel per se, slander, slander per se, and intentional interference with prospective economic advantage, against Chelsea Filer. Ms. Filer, who attended a residential youth treatment center years ago (but not DRA's facility), has become an advocate for youth who are sent to such treatment centers. She has been highly critical of DRA, and as part of her campaign against DRA, she started a website called www.drasurvivors.com. DRA alleges that statements she made on the website are defamatory. In addition, DRA alleges that Ms. Filer made defamatory statements about DRA on Facebook pages, blogs, and other media, both in writing and orally. (Am. Compl. (Dkt. No. 23) ¶ 10.)

2

Ms. Filer raises a defense under the California Anti-SLAPP statute. Cal. Civ. Proc. Code § 425.15 to § 425.18 (West 2015). Anti-SLAPP laws, which have been enacted in many states, provide conditional immunity (or grant a privilege) for statements made about issues of public concern, typically in the context of petitioning the government. They are "designed to protect the defendant from having to litigate meritless claims aimed at chilling First Amendment expression . . . ." Batzel v. Smith, 333 F.3d 1018, 1025 (9th Cir. 2003). See also Cal. Civ. Proc. Code § 425.16 (West 2015) ("The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.").

Ms. Filer has filed a Special Motion to Strike the Complaint, a procedural requirement of the California anti-SLAPP statute.[5] The California anti-SLAPP statute typically requires a plaintiff alleging defamation to establish, without the benefit of discovery, a probability that he or she will prevail on the claims. Cal. Civ. Code § 425.16(b)(2). The parties have not yet conducted discovery.

In response, DRA has filed a motion to stay briefing on the motion to strike pending discovery. DRA contends that California's anti-SLAPP law is a procedural statute that may not be applied in federal court because it conflicts with the Federal Rules of Civil Procedure. DRA alternatively contends that even if the court finds that either California's or Utah's anti-SLAPP statute is applicable in this federal diversity action, DRA is entitled to discovery before the court

---

[5]Her counterclaim under Utah law is an "alternative" to her California-law-based motion to strike. See Utah Citizen Participation in Government Act, Utah Code Ann. § 78B-6-1401 to § 78B-6-1405.

considers the merit of Ms. Filer's claim to immunity from suit for defamation.

DRA's motion to stay raises two threshold questions. The first is whether the anti-SLAPP laws conflict with the Federal Rules of Civil Procedure. The second question (assuming the answer to the first question is no) is whether California or Utah law applies to the anti-SLAPP issues raised by Ms. Filer. As part of the second query, the court must also address DRA's claim that it needs to conduct discovery before the court decides the choice of law question.

## ANALYSIS

**1.	The Anti-SLAPP Statute Does Not Conflict With Federal Law.**

DRA contends that California's anti-SLAPP[6] statute is procedural[7] and directly conflicts with the Federal Rules of Civil Procedure. According to DRA, the court, sitting in diversity jurisdiction, must deny the Special Motion to Strike under the Erie doctrine. The Erie Doctrine, announced in Erie Railroad Co. v. Tompkins,[8] requires a court sitting in diversity to "apply state substantive law and federal procedural law." Hanna v. Plumer, 380 U.S. 460, 465 (1965). See

---

[6]Although DRA does not expressly address the Utah anti-SLAPP statute, DRA's arguments would apply equally to the Utah law.

[7]DRA's statement that Section 425.16 is located in the civil procedure portion of California's code has no weight. See Shady Grove Orthopedic Assocs. v. Allstate Ins., 130 S. Ct. 1431, 1449 (2010) (Stevens, J., concurring in part and concurring in the judgment) (balancing the nature of the state law and federal rule "does not necessarily turn on whether the state law at issue takes the *form* of what is traditionally described as substantive or procedural. Rather, it turns on whether the state law actually is part of a State's framework of substantive rights or remedies.") (emphasis in original); Liberty Synergistics Inc. v. Microflo Ltd., 718 F.3d 138, 152 (2d Cir. 2013) (in deciding whether a state law is substantive, courts look "not to the *labels* but to the *content* of state rules of decision") (emphasis in original).

[8]304 U.S. 64 (1938).

also <u>Shady Grove Orthopedic Assocs. v. Allstate Ins.</u>, 130 S. Ct. 1431 (2010) (if the federal rule addresses the dispute and the state law is procedural, not substantive, the federal rule applies).[9]

In particular, DRA asserts that the anti-SLAPP statute's default rule (to quickly resolve the question of immunity without discovery) directly conflicts with Federal Rule of Civil Procedure 56(d), which grants DRA a right to conduct discovery before the court engages in a summary judgment analysis. DRA characterizes the motion to strike as a Rule 56 motion for summary judgment because the motion is accompanied by declarations. It then points to Rule 56(d), which allows a court to stay a decision on the motion for summary judgment to allow discovery if certain circumstances are met: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

DRA then points to the discovery stay in the California anti-SLAPP statute, which requires that

> <u>all discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion.</u> The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision.

Cal. Civ. Proc. Code § 425.16(g) (emphasis added). Comparing Rule 56(d) to the California

---

[9]The Tenth Circuit has addressed some <u>Shady Grove</u> issues, but none in the anti-SLAPP context. <u>See</u> <u>Jones v. United States Parcel Serv.</u>, 674 F.3d 1187 (10th Cir. 2012) (addressing Fed. R. Civ. P. 38 (whether a jury should determine the appropriate amount of punitive damages)); <u>James River Ins. Co. v. Rapid Funding, LLC</u>, 658 F.3d 1207, 1217 (10th Cir. 2011) (addressing Fed. R. Evid. 701); <u>Garman v. Campbell County Sch. Dist. No. 1</u>, 630 F.3d 977, 983 n.6 (10th Cir. 2010) (addressing Fed. R. Civ. P. 8(a)(1) notice pleading standards).

rule, DRA contends that the discovery stay is contrary to the pleading and discovery rules in federal court. DRA asserts that "there are numerous issues of fact necessarily involved in a Court's determination of the merits of Defendant's Special Motion to Strike, which must be developed prior to the Court's ruling on the Special Motion to Strike." (DRA Mot. Stay Briefing (Dkt. No. 39) at 3.) In its motion to stay, DRA identifies questions of fact that it believes cannot be resolved without discovery. (Id.)

An anti-SLAPP statute is typically a hybrid procedural/substantive law, so application of the Erie rules is more complicated than DRA suggests. "Most anti-SLAPP laws rely on procedural mechanisms to protect substantive rights and thus pose a quandary for federal courts hearing state law claims: On the one hand, under Erie R.R. Co. v. Tompkins, federal courts must apply the rules of decision defined by state law; on the other hand, the Federal Rules of Civil Procedure . . . apply to 'all civil actions and proceedings' in federal court." Note, *Erie* and the First Amendment: State Anti-SLAPP Laws in Federal Court After *Shady Grove*, 114 Colum. L. Rev. 367 (March 2014).

In this case, the court finds that the anti-SLAPP law is substantive. The anti-SLAPP statute "is designed to protect the defendant from having to litigate meritless claims aimed at chilling First Amendment expression . . . ." Batzel v. Smith, 333 F.3d 1018, 1025 (9th Cir. 2003). "[A] defendant's rights under the anti-SLAPP statute are in the nature of immunity" because "California lawmakers wanted to protect speakers from the trial itself rather than merely from liability." Id. See also Chi v. Loyola Univ. Med. Ctr., 787 F. Supp. 2d 797, 808-09 (N.D. Ill. 2011) (holding that Illinois' anti-SLAPP statute is substantive despite its location in the state's civil procedure code because its immunity and attorneys' fees provisions "are plainly

meant to affect conduct outside of the litigation process, such as a person's decision to exercise his First Amendment rights without fear of retaliation.").

The court's conclusion is consistent with the framework set forth in Shady Grove, where the United States Supreme Court addressed an Erie issue. 109 S. Ct. 1431 (2010). The federal rules may not "'abridge, enlarge or modify any substantive right'" granted by a state. Id. at 1449 (Stevens, J., concurring)[10] (quoting Rules Enabling Act, 28 U.S.C. § 2072(b)). California's anti-SLAPP law, which includes a default discovery stay, is substantive because it is "so bound up with the state-created right or remedy that it defines the scope of the substantive right or remedy." Id. at 1450. "Such laws . . . may be seemingly procedural rules that make it significantly more difficult to bring or to prove a claim, thus serving to limit the scope of that claim." Id. (emphasis added). Because that is what California-s anti-SLAPP statute accomplishes, it is substantive.

Even though the court finds that the anti-SLAPP laws are substantive, DRA's concerns about the discovery stay in the California anti-SLAPP statute should be allayed by the section in the anti-SLAPP statute giving the court discretion to stay proceedings pending discovery. "The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision." Cal. Civ. Proc. Code § 425.16(g). Because the discovery stay is not absolute, that section in essence provides protection similar to what DRA

---

[10]The Tenth Circuit, noting the highly fractured Supreme Court opinion in Shady Grove (four justices who joined in different parts of Justice Scalia's opinion, Justice Stevens who filed a concurring opinion, and four justices who dissented), has adopted Justice Stevens' concurrence as the opinion governing the issue of whether a state law conflicts with the federal rules of procedure. James River Ins. Co., 658 F.3d at 1217; Garman, 630 F.3d at 983 n.6.

would get if the court applied Rule 56(d). There is no direct collision because of that discovery exception.

The court addressed this issue in its 2008 pre-Shady Grove decision addressing the state-versus-federal procedural rule conflict raised by an anti-SLAPP motion to strike in USANA Health Sciences, Inc. v. Minkow, Case No. 2:07-cv-159-TC, 2008 WL 619287 (Mar. 4, 2008). In that case, this court found that the California anti-SLAPP statute[11] did not conflict with the federal rules because even the California anti-SLAPP statute allows the court discretion to permit discovery in appropriate cases. Id. at *3.

DRA discounts the persuasive value of the USANA opinion, noting that the case is factually distinguishable. In USANA, the parties had already engaged in significant discovery, so there was no conflict with Rule 56(d) in that situation. Even so, USANA's focus on Erie principles still applies, and the facts of that case do not detract from the basic legal premise of the holding.

As the court did in USANA, because no conflict arises between the anti-SLAPP statute and the Federal Rules of Civil Procedure, the court considers the "twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws" in deciding whether application of an anti-SLAPP statute would be problematic. Hanna v. Plumer, 380 U.S. 460, 468 (1965). As noted by the Ninth Circuit,

> Plainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum. Conversely, a litigant otherwise entitled to

---

[11]The parties in USANA did not dispute that the California anti-SLAPP law applied, so there was no choice of law issue.

> the protections of the anti-SLAPP statute would find considerable disadvantage in a federal proceeding. This outcome appears to run squarely against the "twin aims" of the Erie doctrine.

United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc., 190 F.3d 963, 973 (9th Cir. 1999). This concept applies equally here.

For the reasons set forth above, the court finds that the anti-SLAPP statutes (California and Utah) do not conflict with the Federal Rules of Civil Procedure.[12]

**2.     There is a conflict between the California statute and the Utah statute.**

The court only engages in a choice of law analysis if a true conflict exists between the two state laws. "Typically, a choice of law analysis is preceded by a determination of whether there is a true conflict between the laws of those states that are interested in the dispute." One Beacon Am. Ins. Co. v. Huntsman Polymers Corp., 276 P.3d 1156, 1165 n.10 (Utah Ct. App. 2012) (citing Am. Nat'l Fire Ins. Co. v. Farmers Ins. Exch., 927 P.2d 186, 188 (Utah 1996); Restatement (Second) of Conflict of Laws § 205 cmt. a (1971)).

Here, the two statutes conflict primarily because the California's anti-SLAPP statute and the Utah anti-SLAPP statute place significantly different burdens of proof on a party seeking protection under the statute. In California, the party filing the motion to strike must show that

---

[12]DRA alternatively contends that California's anti-SLAPP statute does not apply because it only protects a constitutional right to freedom of speech, and defamation, by definition, is not protected speech under the First Amendment. DRA, by making this argument, expects the court to assume that the speech is not protected, i.e., that DRA's claims have been proven, simply because DRA labels the speech defamatory. This essentially "puts the cart before the horse." As for DRA's "state actor" argument (see Pl.'s Br. on Choice of Law Analysis and Discovery Issues Related Thereto (Dkt. No. 46) at 8), the court finds that it has no merit for the reasons stated by Ms. Filer in her reply brief. (See Dkt. No. 51 at 5 n.1.)

her statements and actions address a matter of public significance, and then, if that relatively slight burden is met, the party bringing the libel claim must establish "a probability that he or she will prevail on the claim" alleged in the complaint. Cal. Civ. Proc. Code § 425.16(b)(1), (b)(3). In contrast, the party raising the anti-SLAPP defense under the Utah statute must show "by clear and convincing evidence that the primary reason for the filing of the complaint was to interfere with the first amendment right of the [moving party, i.e.,] that the primary purpose of the action is to prevent, interfere with, or chill the moving party's proper participation in the process of government." Utah Code Ann. § 78B-6-1404(1)(b). Also, under the Utah statute, no burden shifts to the party alleging libel.

Having identified a conflict, the court must continue its choice of law analysis to determine which state's law applies.

### 3.  California has "the most significant relationship" to the anti-SLAPP issue.

In an action in which the federal district court's jurisdiction is based on the diversity of the parties' citizenship, the court must apply the conflict of law rules of the forum in which it sits. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 417 (2010) (Stevens, J., concurring in part and concurring in judgment); Gorsuch Ltd. v. Wells Fargo Nat'l Bank Ass'n, 771 F.3d 1230, 1236 n.7 (10th Cir. 2014). Utah courts have adopted the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws § 145. Waddoups v. Amalgamated Sugar Co., 54 P.3d 1054, 1059 (Utah 2002). "The rights and liabilities of the parties with respect to an issue of tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the

parties <u>under the principles stated in § 6</u>." Restatement (Second) of Conflict of Laws § 145(1) (1971) (emphasis added). The principles in § 6 include

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relative policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law applied.

<u>Id.</u> § 6(2). <u>See also</u> <u>Morris v. Health Net of Cal., Inc.</u>, 988 P.2d 940, 941 n.4 (Utah 1999) ("Restatement (Second) Conflict of Laws § 6 outlines choice-of-law principles for the courts to follow.").

Under the "most significant relationship" test in the tort context, the court considers four factors: (1) the place where injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship (if any) between the parties is centered. <u>Waddoups</u>, 54 P.3d at 1060. These factors "'are to be evaluated <u>according to their relative importance with respect to the particular issue</u>.'" <u>Id.</u> (quoting Restatement (Second) Conflict of Laws § 145(2) (1971)) (emphasis added). The fourth factor has no significance here because the parties had no relationship. That leaves three factors as well as the § 6 principles (the most central being the relative policies of Utah and California, including policies underlying the particular law at issue).

DRA contends that it must have limited discovery before it can adequately address these factors:

> In order to aid the parties and the Court in reaching [the choice of law] conclusion, discovery is necessary on several issues including: (1) whether, to

what extent, and where any "reputational" injury has occurred; (2) where the
conduct causing DRA's injury occurred; (3) the nature of the relationship of the
parties and where that relationship is centered; (4) the veracity and rebuttal of
Defendant's sworn statements and documents presented on the choice of law
issues; and (5) the third-party statements, interviews and communications [Ms.
Filer] obtained or conducted in developing and publishing defamatory statements
through her website which presumably included multiple contacts with the State
of Utah.

(Pl.'s Br. on Choice of Law Analysis and Discovery Issues Related Thereto [hereinafter "DRA's Choice of Law Brief"] (Dkt. No. 46) at 3.)

As a threshold matter, the court first finds that the scope of DRA's discovery request is too broad for the issue currently before the court. Second, the court concludes, based on its review of the record, that discovery is not needed to determine which state has the most significant relationship to the relevant issues. Despite the concerns expressed by DRA (see id. at 15-16, 29-31), the necessary information is already in the record.

As for the analysis itself, each party takes a different approach to the choice of law analysis.

DRA applies the four-part test to its defamation claims,[13] citing to a handful of cases that do the same even though an anti-SLAPP statute conflict was the initial question in those cases. For instance, DRA cites to Adelson v. Harris, 973 F. Supp. 2d 467 (S.D.N.Y. 2003). The Adelson court, in determining whether the anti-SLAPP statute of the District of Columbia rather than the New Jersey statute applied, focused its analysis on the defamation causes of action and discussed multi-state "aggregate communications" to determine that the state of the party

---

[13]DRA does at one point claim that the analysis is a comparison of California's and Utah's anti-SLAPP statutes, but DRA still analyzes the issue based on the elements of the defamation claims. (See DRA's Mot. to Stay Briefing (Dkt. No. 39) at 6, 8.)

alleging defamation has the most significant relationship to the issues.

Ms. Filer applies the "most significant relationship" test to her anti-SLAPP statute claim rather than the defamation claims. By doing so, Ms. Filer applies the doctrine of "dépeçage."

"Dépeçage is the widely approved process whereby the rules of different states are applied on the basis of the precise issue involved." Johnson Continental Airlines Corp., 964 F.2d 1059, 1062 n.4 (10th Cir. 1992). See also Ruiz v. Blentech Corp., 89 F.3d 320, 324 (7th Cir. 1996) (defining dépeçage as "the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis"); Underground Solutions, Inc. v. Palermo, 41 F. Supp. 3d 720, 722-23 (N.D. Ill. 2014) ("[Dépeçage] applies when it is appropriate to apply the law of more than one jurisdiction, such as when the issues to which the different laws applied are separable.") (internal quotation marks and citation omitted).

This parsing of issues is consistent with the Restatement § 145 approach, which Utah courts have adopted. See Ruiz, 89 F.3d at 324 (the Restatement "enumerates specific factors that identify the state with the most significant contacts to an issue, and the relevant factors differ according to the area of substantive law governing the issue and according to the nature of the issue itself." (emphasis added); Townsend v. Sears, Roebuck & Co., 879 N.E.2d 893, 901 (Ill. 2007) ("[S]ection 145 explicitly refers to a selective, issue-oriented approach . . . . By prescribing this analytical approach, the Second Restatement authorizes the process of *dépeçage*, which refers to the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis.") (emphasis added).

Here, the substantive issue concerns immunity from trial for alleged defamation, not whether a party has been defamed. See Palermo, 41 F. Supp. 3d at 720 ("the anti-SLAPP

13

question involves whether a statement is privileged, not whether its content is defamatory."); Chi v. Loyola Univ. Med. Ctr., 787 F. Supp. 2d 797, 803 (N.D. Ill. 2011) ("'The issue of whether a statement is defamatory or invades the right to privacy is distinct from the issue of whether that statement is privileged'" under an anti-SLAPP statute) (quoting Global Relief Found. v. New York Times Co., Case No. 01-C-8821, 2002 WL 31045394, *10 (N.D. Ill. Sept. 11, 2002)). Indeed, there is no choice of law issue for the defamation claims, because Ms. Filer agrees that Utah law applies to that area of substantive law. To apply the test to the defamation claims would disregard the immediate controversy before the court, that is, whether Ms. Filer is entitled to the protection of an anti-SLAPP statute.[14] Analyzing whether Utah law applies to the defamation claims would not accomplish anything. Accordingly, the court will focus its choice of law analysis on Ms. Filer's defense under the anti-SLAPP suit rather than the defamation torts.

The "purpose behind an anti-SLAPP law is to encourage the exercise of free speech," and California "has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens." Id. at 803. "[T]he place where the allegedly tortious speech took place and the domicile of the speaker are central to the choice-of-law analysis on this issue." Id. (emphasis added). The remaining two factors (the place where the injury occurred, and the relationship of the parties) have little, if any, relevance in this area of law.

For purpose of this analysis, the domicile of the speaker is established. The record shows

---

[14]Most courts making determinations about which state's anti-SLAPP statute applies do not apply the test to the underlying tort claims. See, e.g., Underground Solutions, Inc. v. Palermo, 41 F. Supp. 3d 720 (N.D. Ill. 2014); Chi, 787 F. Supp. at 803; Competitive Techs. v. Fujitsu Ltd., 286 F. Supp. 2d 1118 (N.D. Cal. 2003) (using dépeçage to address choice of law issue concerning anti-SLAPP statute).

that Ms. Filer (the speaker) is a resident of the State of California.  (See Am. Compl. ¶ 7.)  Ms. Filer visited the State of Utah once, when she was 11.  But, she says, "[s]ince that visit, I have not returned to Utah."  (Decl. of Chelsea Papciak (Dkt. No. 33) ¶ 40.)

DRA challenges Ms. Filer's representation that she is a resident of California.  It contends that discovery, including a deposition to cross-examine Ms. Filer, is necessary to establish her place of residence and domicile.  (DRA's Choice of Law Brief at 31.)  But DRA has not provided any evidence suggesting that the court should doubt Ms. Filer's sworn statement.  Indeed, in its complaint, DRA alleged, upon information and belief, that Ms. Filer is a citizen and resident of the State of California.  (Am. Compl. ¶ 7.)  Also, as Ms. Filer points out, DRA served Ms. Filer with process in California (see Def.'s Response to DRA's Choice of Law Brief (Dkt. No. 51) at 13 (citing summons and return of service, Dkt. Nos. 5, 6)).  The court will not indulge DRA's request to cross-examine Ms. Filer to determine whether she is indeed telling the truth, especially in light of DRA's service of process on Ms. Filer in California.

The other factor to consider is the place where the speech occurred.  All of the specific statements identified by DRA in its Amended Complaint were published on Ms. Filer's website. (See Am. Compl. ¶¶ 10-12.)  The record is sufficient for the court to conclude that Ms. Filer was in California when she posted those allegedly defamatory statements to the website.

DRA insists that it is entitled to discovery to pinpoint where Ms. Filer was located at the time she posted statements to the website.  But the record (consisting of the amended complaint, briefs, and declarations) is sufficient to determine the location of the speech.

First, Ms. Filer expressly represents in her brief that she created the website and posted to it in California.  (See Def.'s Response to DRA's Choice of Law Brief at 13.)  Second, because

Ms. Filer is a resident of California, it is logical to conclude that the website was created in California and that at least a portion of the statements on the website were posted in California. The only other state profiled in the complaint is Utah. But Ms. Filer, apart from one trip at the age of 11, has never been to Utah, so it is safe to say that she did not post anything on her website from the State of Utah. And the remaining allegations in the complaint about locations relate to Ms. Filer's attendance at unidentified out-of-state conferences.

Under a similar record in an anti-SLAPP case, the court in Underground Solutions, Inc. v. Palermo, 41 F. Supp. 3d 720 (N.D. Ill. 2014), found that the alleged defamatory activities on the Internet occurred in the state where the speaker lived. The Palermo court determined that the complaint (which focused on Tennessee, the speaker's place of residence) could be "fairly construed" to allege that at least some of the speaker's defamatory activities occurred in the speaker's state of residence. Id. at 724. For example, the complaint alleged that the defendant made statements in a slideshow to third parties at unidentified industry conferences and then posted the slideshow on his website. Although the complaint did "not provide specifics about [the speaker's] web posting locations or servers," id., the court found that Tennessee was the logical place for the origin of the statements, noting that "the mention of [the speaker's] Tennessee domicile in this context otherwise makes no sense." Id. at 725.

The Palermo court then addressed the opponent's argument that a court making a choice of law determination in favor of the speaker must necessarily find that the speech originated in within the borders of the state where the speaker resides. The opponent cited to Chi v. Loyola Univ. Med. Ctr., 787 F. Supp. 2d 797 (N.D. Ill. 2011), which provides that a "'state has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens, at least

when, as in this case, the speech initiated within the state's borders.'" Id. (emphasis added). The Palermo court rejected the opponent's reliance on Chi:

> He appears to assume that the [Chi] Court meant that a state's anti-SLAPP statute governs *only* in situations where a citizen of the state also performs a speech act within its borders. But the [Chi] Court did not intend the "at least when" clause of that sentence as a limitation on the rule. Rather, the Court was simply marking a clear-cut example of behavior warranting application of the domicile state's anti-SLAPP law.

Palermo, 41 F. Supp. 3d at 725 (emphasis in original).

As in Palermo, the residence of the party seeking protection under the anti-SLAPP law—here, Ms. Filer—has great weight in the analysis. Ms. Filer's California residence, California's strong interest in protecting its citizens' free speech activities, and the court's conclusion that the record, fairly construed, shows that much of the speech likely originated in California, all weigh strongly in favor of applying California's, not Utah's, anti-SLAPP law.

For these reasons, the court concludes that California has the "most significant relationship" to the anti-SLAPP issue, and so the court will apply California's anti-SLAPP law.

## ORDER

The court directs the parties to brief the issue of whether discovery is necessary before the parties fully brief the merits of Ms. Filer's Special Motion to Strike. **Defendant Chelsea Filer's opposition to Motion to Stay Briefing (Dkt. No. 39) is due no later than Tuesday, June 23, 2015. Diamond Ranch Academy may file a response no later than Tuesday, July 7, 2015.**

Once the court rules on that discovery issue (that is, whether to grant DRA's Motion to Stay Briefing on the motion to strike), the court will either set a discovery schedule or set

deadlines for filing briefs on whether the California anti-SLAPP law bars DRA's defamation claims.

    DATED this 9th day of June, 2015.

                                   BY THE COURT:

                                   */s/ Tena Campbell*

                                   TENA CAMPBELL
                                   U.S. District Court Judge